115 N.J. Super. 417 (1971)
279 A.2d 909
STATE OF NEW JERSEY
v.
ROBERT V. HAYNIE. STATE OF NEW JERSEY
v.
EDGAR ACOSTA.
Superior Court of New Jersey, Essex County Court, Law Division (Criminal).
Decided July 8, 1971.
Mr. Louis Berman, Assistant Prosecutor, for State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Benjamin A. Stanziale for defendant, Robert V. Haynie.
*418 Mr. Malcolm Colton for defendant Edgar Acosta (Mr. Leonard D. Ronco, Deputy Public Defender of Essex County, attorney).
MARZULLI, J.C.C.
Defendant Robert V. Haynie was arrested on September 22, 1970 for illegally possessing .03 grams of marihuana. He was subsequently indicted under N.J.S.A. 24:18-4 for the illegal possession of a narcotic drug. On May 24, 1971 he pleaded guilty to the downgraded offense of using a narcotic drug under N.J.S.A. 2A:170-8.
On May 27, 1971 defendant Edgar Acosta pleaded guilty to the illegal use of a narcotic drug on February 28, 1970, contrary to the provisions of N.J.S.A. 2A:170-8.
Under N.J.S.A. 2A:170-8, which has now been repealed, such violations as disorderly person offenses were punishable under N.J.S.A. 2A:169-4, which provides:
Except as otherwise expressly provided, a person adjudged a disorderly person shall be deemed to have been guilty of a petty offense and shall be punished by imprisonment in the county workhouse, penitentiary, or jail for not more than 6 months, or by a fine of not more than $500.00 or both.
In addition to this general penalty, N.J.S.A. 2A:170-8 also provided for the mandatory forfeiture of the offender's right to operate a motor vehicle in this State for a period of one year.
The issue presented by this case is whether a judge is required to sentence under N.J.S.A. 2A:169-4 or has the discretion to prescribe sentence under the newly adopted Controlled Dangerous Substances Act, L. 1970, c. 226, which repealed N.J.S.A. 2A:170-8.
Defendants have no prior convictions for any narcotic offenses. Under section 27 of the new act (N.J.S.A. 24:21-27) the sentencing judge has the discretion of placing a defendant, with his consent and upon notice to the prosecutor, on probation without ever entering a judgment of conviction against him. This section further provides:
*419 Upon fulfillment of the terms and conditions of probation, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities, if any, imposed by law upon conviction of a crime or disorderly person offense, but shall be reported by the clerk of the court pursuant to the Controlled Dangerous Substances Registry Act. Discharge and dismissal under this section may occur only once with respect to any person.
The new act in section 28 (N.J.S.A. 24:21-28), also provides a procedure by which a young offender may apply to the court for an order to expunge all recordations of his arrest, trial and conviction except those required under the Controlled Dangerous Substances Registry Act of 1970, L. 1970, c. 226. Section 28 continues:
The effect of such order shall be to restore such person, in the contemplation of the law, to the status he occupied prior to such arrest and trial. No person as to whom such order has been entered shall be held thereafter under any provision of any law to be guilty of perjury or otherwise giving a false statement by reason of his failures to recite or acknowledge such arrest or trial in response to any inquiry made of him.
As one can see from the above portions of the new act, the Legislature, presumably aware of the increased experimentation with marihuana among our younger generation, provided procedures by which a one-time experimenter may be freed of the stigma and burdens which a conviction of a disorderly person offense would entail.
While it is true that the general disorderly person provisions allow a person who has been adjudged a disorderly person to have the record of his conviction expunged, this will not occur until after a lapse of five years from the date of such conviction. See N.J.S.A. 2A:169-11. However, in the case of youthful offenders the period of age 17 through 25 is a critical juncture in their lives, for in this period many of them will be applying for admission to colleges and universities *420 and others will be attempting to secure permanent employment. The court is well aware that these applications usually inquire as to whether a person has a record.
Bearing this in mind, we will examine how the law regards the "user" of marihuana. As our Supreme Court noted in the recent case of State v. Smith, 58 N.J. 202 (1971), the New Jersey Legislature, even under the old narcotics laws, treated the narcotic user less severely than the "possessor" and the "seller." This is evident from the greater penalties prescribed for possessors and sellers, as compared to the penalty for users. See N.J.S.A. 24:18-47 and now 24:21-19, 20; and N.J.S.A. 2A:170-8, 2A:169-4 and now 24:21-20. As the court supra stated in Smith,
With regard to the user, the lawmaker saw him as a less culpable offender than the trafficker and concluded that although he should be punished and the public protected against dangers that might arise from his use of narcotics, less severe sanctions were justified in order to pursue the aim of rehabilitating him. [at 209]
And in State v. Ward, 57 N.J. 75 (1970), our Supreme Court granted certification to establish guidelines for the sentencing of first offenders whose possession was incidental to their own use. The court, stressing the goal of reformation, stated:
We cannot escape the unhappy fact that our youth have been involved with marihuana in disturbing numbers. That this is so does not palliate the wrong. Nor should we be thought to encourage or condone such conduct. The statute should and will be enforced. But it remains the policy of the law to reform the youthful offender. Sentencing judges should direct the punishments they impose to the goal of reformation. * * * We think that generally a suspended sentence with an appropriate term of probation is sufficient penalty for a person who is convicted for the first time of possessing marihuana for his own use. Probation is designed to aid both society and the offender by affording opportunity for correction under suitable supervision. It is hoped that during the probation the offender will establish himself as a law-abiding member of the public and thus avoid the need for confinement with its possibly adverse consequences. [at 82-83]
*421 In a special message to the Legislature, "Drug Abuse  Problem of the Decade" (April 27, 1970), Governor Cahill addressed himself to the proposed New Jersey Controlled Dangerous Substances Act thusly:
Thirdly, the proposed Act takes a first legislative step at recognizing that use of drugs is a social or medical illness. Thus, with respect to persons charged with use or possession of any dangerous drug for the first time, the Act confers upon the court, new discretionary authority to defer criminal proceedings and to impose a special term of probation. If the conditions of this probation are met, the court may then dismiss the proceedings. In order that youthful first offenders are not saddled with a lifetime arrest record, the Act provides for an immediate expungement of records with respect to arrest.
Under the new act the Legislature, also presumably aware of the increased use of marihuana, especially among the younger generation, and of the important need of rehabilitating these offenders, has given sentencing judges more discretion in the treatment of marihuana offenders. For example, upon conviction of illegal use of marihuana under the Controlled Dangerous Substance Act the forfeiture of a defendant driver's license is no longer mandatory but rests within the discretion of the judge. In Smith, supra, our Supreme Court gave judicial recognition to the marked changes in the legislative direction, by permitting the cause to be remanded to the county district court to determine whether a defendant driver's license should be forfeited even though the conviction for violating N.J.S.A. 2A:170-8 remained  a conviction which meant mandatory forfeiture under the old law. As the court said;
Since the Legislature has now indicated that the circumstances of each case should play an important role in the exercise of the trial court's discretionary decision respecting forfeiture of a driver's license for drug use, the automatic visitation of such a penalty upon this defendant at this late date would seem to be unjust. [at 216]
It would seem unfair to these defendants, in view of the executive, legislative, and judicial pronouncements concerning *422 the reformation of such narcotic offenders, not to treat their offenses under the provisions of the new act. The Supreme Court of California, in In re Estrada, 63 Cal.2d 740, 48 Cal. Rptr. 172, 408 P.2d 948 (1966), facing the same issue, held that where a criminal statute is amended which mitigates the punishment for a prohibited act after the act is committed but before final judgment, the punishment provided by the amendatory act should be imposed. The court went on to say:
The problem, of course, is one of trying to ascertain the legislative intent  did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors. [48 Cal. Rptr. at 175, 408 P.2d at 951]
The court then discussed the effect of a saving clause, such as contained in section 40 of the new act, saying:
The fact that the offender can be punished under the old law when the new law increases the punishment where there is an express or implied saving clause, certainly is not conclusive on the legislative intent where the new statute mitigates the punishment. If there is no saving clause he can and should be punished under the new law. (Sekt v. Justice's Court, Supra [26 Cal.2d 297], at p. 305, 159 P.2d 17.) In such a situation the rule of construction that statutes are normally to be interpreted to operate prospectively and retroactively (a rule embodied in Section 3 of the Penal Code) has been rebutted. The existence of a saving clause does not invalidate this conclusion. As already pointed out, if the saving clause expressly provided that the old law should continue to operate as to past acts, so far as punishment is concerned that would be the end of the matter. But that is not what the Legislature has done in Section 9608. A reading of that section demonstrates that the Legislature, while it positively expressed its intent that an offender of a law that has been repealed or amended should be punished, did not directly or indirectly indicate whether he should be punished under the old law or the new one. As has already been pointed out, where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed. [48 Cal. Rptr. at 77, 408 P.2d at 953]
*423 Section 40 of the new act states that prosecutions shall not be affected or abated by the repealers of the new act. However, like the California saving clause, it does not direct under which statute punishment is to be imposed.
As noted above, our Supreme Court in Smith took recognition of the legislative direction and remanded the case to the county district court so that court could use its discretion respecting the driver's license forfeiture, which, in effect, was allowing that court to apply a provision of the new act. Based on the reasoning of that decision, it would seem that a sentencing judge, depending on the circumstances of a particular case, would have the discretion to sentence under the new act.
As mentioned above, the Legislature has in the new act provided a procedure by which the court may place certain first offenders on probation without entering a judgment of conviction. N.J.S.A. 24:21-27. Therefore, taking notice of the marked change in the legislative direction in the treatment of marihuana first offenders, and being aware of the adverse effects of a judgment of conviction, and based on the circumstances of these cases, after notice to prosecutor and with the consent of the defendants, this court will use its discretionary power and not enter a judgment of conviction and will place defendant on probation for two years, to pay $1 a week, with the complaints to be dismissed upon proper motion upon fulfillment of the terms and conditions of probation.